Anthony Santucci, Esq. SBN 83793
1459 18th. Street PMB 210
San Francisco, CA. 94107
Ph. 408-984-8555; Fax 408-374-1031
santuccilaw@gmail.com

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SENAH, INC., PLAINTIFF, | Case No.: 5:16-cv-07053nc |
| VS. | |
| AVIC FORSTAR AKA XI'AN FORSTAR | PROPOSED ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND JUDGMENT [RE: ECF 47, 49] |
| S&T CO, LTD., AND DOES 1-10 | |
| DEFENDANT | |

Plaintiff Senah, Inc., seeks recovery of 1) unpaid commissions and 2) the present value of post termination commissions on sales of Defendant Xian Forstar S&T Co. Ltd products for which plaintiff is the 'procuring cause' by contract, dated 08/07/2004.

A prior judgment between the same parties judicially established the following matters relevant to this judgment (Also alleged in the Complaint in this current matter, ECF 1): 1) Plaintiff is a corporation, organized and operating through a principal place of business in California; 2) At all times relevant Donald Hanes was president and sole shareholder of Plaintiff; 3) Plaintiff served as Defendant's authorized sales agent pursuant to the mutually negotiated contract of 08/07/2004; 4) Defendant is a business organization with its principal place of business in China; 5) Defendant sells various electronic components such as castings, microwave & RF components, connectors and adapters. (5:13-cv-04254BLF, ECF 174). The

court may "take judicial notice of publicly-filed records in [its] court . . . concerning matters that bear directly upon the disposition of the case at hand. *United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007) (citations omitted), *cert. denied*, 552 U.S. 969 (2007).

This matter is before the Court on Plaintiff's request for default judgment.

Plaintiff filed the complaint on December 6, 2016. ECF 1. Plaintiff attempted service in compliance with the Hague Convention hiring Legal Language Services, a company skilled in making service of process compliant with the Hague Convention. Attempts at a Hague Convention compliant service commenced in January of 2017 and continued without success into at least December of 2018.

After 23 months of unsuccessful attempts, Plaintiff moved for default judgment pursuant to Article 15 of the Hague Convention. ECF 39. The Clerk Entered Default on 02/05/2019 per Order of court dated 02/04/19. ECFs 45 and 46.

## I.    LEGAL STANDARD

The Court may enter default under Federal Rule of Civil Procedure 55(b) against a defendant who has failed to plead or otherwise defend an action, and under Article 15 of the Hague Convention where there has been a failure to serve summons after 6 months (herein 23 months). "The district courts decision whether to enter default judgment is a discretionary one" *Aldabe v Aldabe, 616 F. 2d 1089, 1092 (9th Cir. 1980).*

Exercise of discretion to enter default judgment requires that the court consider seven factors set forth in *Eitel v McCool, 782 F. 2d 1470, 1471-72(9th Cir. 1986)* (*Eitel* factors): (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of dispute concerning material facts; (6) whether default was due to excusable

neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. After entry of default the court considers these factors and takes all well-pleaded factual allegations in the complaint as true, except those with regard to damages. *Televideo Sys. Inc. v Heidenthal, 826 F. 2d 915, 017-18 (9ᵗʰ Cir. 1987)*. Consideration of competent evidence and other papers submitted with a motion for default judgment to determine damages is discretionary with the court. *Id* On default, the Court is required to assume liability as pled, pending review of damages.

## II.   DISCUSSION

### i.      Factor One: Possibility of Prejudice to the Plaintiffs

*Eitel's* first factor considers whether plaintiff would suffer prejudice if default judgment is not entered. Absent entry of default, Plaintiff has neither recourse nor remedy for Defendant's breach of the 2004 contract or the obligation arising from and owed by Defendant on termination. "Denying a plaintiff a means of recourse is by itself sufficient to meet the burden posed by this factor" *Willamette Green Innovation Ctr., LLC v Quartis Capitol Partners, No. 14-cv-00848, 2014 WL. 5281039-JCS at *6(N.D. Cal. 2014)*

### ii.     Factor Two: Merits of Plaintiff's Substantive Claims

The second *Eitel* claim is for commissions a) unpaid up to the termination of the contract, and b) the present value of commissions on future sales for which Plaintiff is, by contract, the 'procuring cause'. This claim is sourced squarely in the contract of 2004 appointing Plaintiff as sales agent and detailing commissions. Commissions on future sales for which Plaintiff is procuring cause is a) expressly recognized in the contract, and b)well recognized- *AA Sales & Assocs., Inc. v. Coni-Seal, Inc.,* 550 F.3d 605, 610 (7th Cir. 2008); *Houben v. Telular Corp.,* 231 F.3d 1066, 1073 (7th Cir. 2000). The Court accepts as true all

well-pleaded allegations regarding liability. *HICA Educ. Loan Corp v Warne, Case no. 11-cv-04287-LHK, 2012 WL 1156402, at \*2 (N.D. Cal. April 6, 2012)*. Plaintiff's substantive claim is meritorious, satisfying the second *Eitel* factor and weighing in favor of entry of entry of default judgment.

### iii.    Factor Three: Sufficiency of the Complaint

*Eitel* factor three concerns the sufficiency of the complaint. Count 1 of the Complaint is for defendant's breach of contract. An action for breach of contract requires proving (1) the existence of the contract; (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach; and (4) damages to plaintiff from the breach. *CDF Firefighters v Muldonado,* 158 Cal. App. 4th 1226, 1239(2008). Here, Plaintiff has alleged a contract with Defendant, Complaint at XXX, performance, breach, and damages.  Plaintiff has adequately pleaded a claim for breach of contact and the third *Eitel* factor weighs in favor of entry of default judgment.

### iv.    Factor Four: The Sum of Money at Stake in the Action

The fourth *Eitel* factor considers the amount of money at stake in the litigation. *BMW, 2016 WL215983 at \*4.*  When the amount is substantial or unreasonable, default judgment is discouraged. *Id* Though seeking $180 million in damages, Plaintiff has self-imposed significant limitations: Plaintiff's sought unpaid commissions capped by the complaint at $29 million, for which the evidence supported a finding of $50 million. Likewise, the present value of future procuring cause commissions has been voluntarily capped by Plaintiff at $29 million, though the expert's analysis supported $52 million. A total of $102 million was capped at $58 million before being trebled to $174 million due to Defendant's willing non-payment and other willful breaches, as pled and prayed. In similar fashion the

interest which would have been $11million on demonstrated damages was capped at $6 million, by limiting interest to the capped damages, bringing the total damages claimed to $180 million. In spite of Plaintiff's efforts at balance, ultimately the amount of money Plaintiff seeks is one factor that weighs against the entry of default judgment.

### v.   Factor Five: The Possibility of a Factual Dispute

The fifth *Eitel* factor considers whether there is the possibility of a factual dispute over any material fact. *BMW, 2016 WL215983 at *4.* Given the sufficiency of the complaint and the default entered herein after 23 months of attempted service and one refusal of delivery, infra, no dispute has been raised regarding material facts of Plaintiff's complaint, many of which were established, res judicata, by the judgment in the prior suit (5:13-cv-04254BLF ECF 174). This factor weighs in favor of entry of default judgment.

### vi.   Factor Six: Whether Default Was Due to Excusable Neglect

The sixth *Eitel* factor is whether Defendant's failure to respond to Plaintiff's Complaint was the result of excusable neglect. *BMW, 2016 WL215983 at *4.* In addition to attempts at service via the Hague Convention, Plaintiff also tendered documents to Defendant by email, regular mail (USPS), and private courier (UPS). Plaintiff has presented evidence to the court that an attempt to present notice and documents relating to the April 24 hearing to Defendant by UPS resulted in a notation that the attempted delivery had been refused. ECF 53. This is consistent with a) Defendant's withdrawal from the previous litigation (5:13-cv-04254BLF, ECF 131, 131-1, 142) and b) the 23-month failure of Hague Convention service efforts. The evidence suggests that failure of service was more likely by design by Defendant than excusable neglect on the part of Plaintiff, weighing heavily for default judgment.

### vii.   Factor Seven: Policy Favoring Decision on the Merits

*Eitel's* final factor is the policy that cases "should be decided upon their merits whenever reasonably possible" *Eitel,* 782 F. 2d at 1472. Although federal policy favors decisions on the merits, Hague Convention Article 15 permits entry of default after extended efforts (23 months) fail to effect service. The general policy of decision on the merits must eventually yield to the more specific language of the Hague Convention, allowing entry of default and causing the seventh *Eitel* factor to weigh in favor of default judgment.

### viii.    Summary

Consideration of all seven Eitel factors finds default judgment warranted and the Court GRANTS Plaintiff's motion for default judgment against Defendant.

### III.    TERMS OF THE JUDGMENT

Upon finding default appropriate, the Court reviews Plaintiff's claims for damages. Plaintiff's evidence is substantial and is follows:

Defendant never appeared in this matter and thus there was no discovery. However, Plaintiff was able to locate audited financial data expressed in English and Chinese on Chinese stock exchanges. (ECF 49-4 through 49-9) Because this matter addresses many of the same evidence and issues as the prior litigation in this matter (5:13-cv-04254BLF), some evidence has been resubmitted: 1) the contract in question (dated 08/07/04) was the same contract as submitted and upheld in the previous litigation( 5:13-cv-04254,  ECF 174) ; 2) The prior work of Plaintiff's expert, Glen Balzer was re-submitted, along with his opinions that Plaintiff is a manufacturer's representative and an independent wholesale sales representative within the meaning of Cal. Civ. Code § 1738.10 et seq. Plaintiff request that the award include commissions computed as 20% of Defendant's sales for 201x-201x,

totaling $52 million, but capped by the pleadings at $29 million; similarly, Plaintiff requests that the award include the present value of post termination commissions, also computed at 20%, for which Plaintiff is by the contract of 08/07/2004, the "procuring cause". Plaintiff is entitled to post-termination commissions based on the common law "procuring cause doctrine." *See Clinton Imperial China, Inc. v. Lippert Mktg., Ltd.,* 377 Ill. App. 3d 474, 878 N.E.2d 730, 738, 316 Ill. Dec. 8 (1st Dist. 2007);  [*3] *Solo Sales, Inc. v. North Am. OMCG, Inc.,* 299 Ill. App. 3d 850, 702 N.E.2d 652, 653-55, 234 Ill. Dec. 312 (2d Dist. 1998); *AA Sales & Assocs., Inc. v. Coni-Seal, Inc.,* 550 F.3d 605, 610 (7th Cir. 2008); *Houben v. Telular Corp.,* 231 F.3d 1066, 1073 (7th Cir. 2000). The complaint does not 'cap' procuring cause commissions.

This required new analysis by Walter Ochynski, Plaintiff's second expert from the prior litigation. Expert Ochynski 1) surveyed exchange rates from 2009 through 2018 to determine statistically derived exchange rates (ECF 50-1 2 through 18) suitable for determining commissions owed, $52,87974.24 (50-2 at 3) capped at $29 million and the present value of future 'procuring cause' commissions, $50,522,964.06 (ECF 50-2 at 8). See ECF 50-1 through 50-4. However, considering the fourth *Eitel* factor, Plaintiff has also voluntarily capped these damages at $29 million.

Plaintiff has next asked that these damages, $102 million capped at $58 million be trebled for Defendants' willful failures to pay commissions or to account for them. Cal. A defendant who 'willfully fails to pay commissions as provided in the written contract shall be liable to the sales representative in a civil action for treble the damages proved….' Cal. Civ. Code § 1738.15. The settled meaning of `willful' . . . is that [Defendant] intentionally failed or refused to perform an act which was required to be done. [Citations.] . . . [R]efusal

to pay need not be based on a deliberate evil purpose to defraud . . . [Citations.]" (*Amaral v. Cintas Corp. No. 2* (2008) <u>163 Cal. App. 4th 1157</u>, 1201 [78 Cal. Rptr. 3d 572].)[7]. *Baker v. American Horticulture Supply Inc., (Cal. Ct. App 2010) 111 Cal. Rptr 3d 695, 186 Cal App 4th 1059.* Accordingly, the damages proven are trebled to $174 million.

Plaintiff further seeks prejudgment interest ay 10% per year. Because jurisdiction is based on diversity, California state law controls the awarding of prejudgment interest. *Gentek Media, Inc. v. Media Servs Omaha,* Case No. 07-cv-7015-DSF(OPx), 2009 WL 1606157. At *2 (C.D. Cal. June 2, 2009). California law provides that for prejudgment interest, where no interest is set by the contract between the parties, the rate shall be 10% per year. Plaintiff has provided interest calculations of $11,065,738.38 on the $52,879,734.24 in unpaid commissions, and has, by ratio, capped this interest to the capped damages of $29 million or $6,068,608.66 ECF 49-3 at 2. The Court, having reviewed Plaintiff's calculations, awards Plaintiff prejudgment interest in the amount of $6,068,608.66.

Plaintiff also seeks attorneys' fees as provided for in the contract (cite) and under the Independent Wholesalers Act, Cal. Civ. Code § 1738.16 (providing for attorneys' fees). Courts use the 'lodestar' method to calculate attorneys' fees, "and the amount of that fee must be determined on the facts of each case." *Camacho v. Bridgeport Fin. Inc..* 523 F. 3d 973, 978 (9th Cir. 2008) "The 'Lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Morales v City of San Rafael,* 96 F. 3d 359, 363 (9th Cir.1996) *opinion amended on denial of reh'g.* 108 F. 3d 981 (9th Cir. 1997). The moving party bears the burden of providing relevant documentation demonstrating the reasonableness of the hours spent on the litigation. *Hensley,* 461 U. S. at 433. In the absence of adequate documentation supporting the number of hours

expended on the lawsuit. "the district court may reduce the award accordingly" *Id.* "The district court also should exclude from this initial [lodestar] calculation hours that were not 'reasonably' expended.'" *Id.*at 434 (quoting S. Rep. No. 94-1011, p.6 (1976)). When determining the reasonable hourly rate, the court must weigh the "experience, skill, and reputation of the attorney requesting fees," and compare the requested rates to prevailing market rates. *Chalmers v. City of Los Angeles,* 796 F. 2d 1205, 1210 (9th Cir. 1986) *opinion amended on denial of reh'g.* 808 F. 2d1373 (9th Cir. 1987); *see also Blum v. Stenson,* 465 U.S. 886,886 (1984). Once calculated, the lodestar amount, which is presumptively reasonable, may be further adjusted based on other factors not already subsumed in the initial lodestar calculation. *Morales,* 96 F. 3d at 363, 364 nn. 3-4 (identifying factors) (citing *Kerr v. Screen Guild Extras, Inc.,* 526 F. 2d 67, 70 (9th Cir. 1975)).

Plaintiff requests payment for 107.2 hours worked (ECF 50-7) at the rate of $300 per hour *Id.* at 6. Lodestar first requires that the Court determine whether counsel's rates are reasonable, as determined by the prevailing market rates in the relevant community. *Blum, 465 U.S. at 886.* The market rates in the comparison should be for attorneys with similar "skill, experience, and reputation" to the moving attorney. *Chalmers,* 796 F. 2d at 1211(citing *Blum,* 465 U.S. at 895 n. 11) The Court must also determine whether the hours expended on this litigation are reasonable.

Plaintiff seeks recovery of fees for the work performed by its attorney, Anthony Santucci. Mr. Santucci is 1978 magna *cum laude* graduate of Santa Clara University's School of Law, was admitted to the California Bar that same year, and practicing as a lawyer continuously since then. Santucci Decl. ¶ 4 ECF 50-6. Mr. Santucci has also been a Certified Public Accountant since 1976. *Id.* at ¶5. Mr. Santucci has practiced as a solo practitioner

since 1981 and his billing rate has been $300 per hour since 1990. *Id.*at ¶6. The Court finds that Mr. Santucci's billing rate is more than reasonable in light of the rates charged by similarly situated counsel in the Northern District of California. (United States Consumer Law Attorney Fee Survey Report) 55, ECF 50-8.

The Court reviews hours spent on the litigation by Mr. Santucci. ECF 50-7 at 2-6. (billing records). In total, Mr. Santucci expended 107.2 hours on this matter from November 19, 2016 through 02/18/2019.  Time was spent preparing and filing the complaint, arranging Hague convention compliant service attempts, addressing recurring inquiries of this Court as to the status of service efforts, and finally on seeking entry and judgment of default. Accordingly, the Court finds the total number of hours spent to be reasonable and in reviewing each billing entry, the Court finds the time spent per task to also be reasonable.

On these preceding bases, the Court approves 107.2 hours at $300 per hour for a total lodestar amount of $32,160.

Plaintiff does not seek any multiplier of the lodestar amount, but does seek reimbursement of costs as follows:

| | | |
|---|---|---|
| filing fee- | $  400.00 | |
| Legal Language Svc Hague service attempt | $2,740.00 | $     3,140.00 |

The Court approves these costs as reasonable.

///////////////////////

///////////////////////

///////////////////////

///////////////////////

///////////////////////

## IV.    ORDER

For the reasons set forth above, IT IS HEREBY ORDERED that Plaintiff's motion for default judgment is GRANTED. The Court further enters judgment in favor of Plaintiff and against Defendant in the amounts as follows:

| | |
|---|---|
| (1) $58 million in damages trebled to | $174,000,000.00 |
| (2) prejudgment interest of | $   6,068,608.66 |
| (3) attorney's fees | $      32,160.00 |
| (4) of costs | $       3,140.00 |
| Total Judgment | $180,103,908.66 |

**IT IS SO ORDERED**


Dated: May __, 2019


_____

Nathanael M. Cousins

PROPOSED ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND JUDGMENT[RE: ECF 47, 49] - 11